IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHON DEON JOHNSON, | No. C 15-3640 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |
| v. | |
| MARTIN BITER, | |
| Respondent. | |

## INTRODUCTION

Petitioner, a California prisoner proceeding pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 challenging his conviction in state court. Respondent was ordered to show cause why the petition should not be granted. Respondent has filed an answer denying the petition. Petitioner filed a traverse. For the reasons discussed below, the petition is **DENIED.**

## STATEMENT

I. PROCEDURAL BACKGROUND

In 2010, petitioner and his co-defendant were convicted in Alameda County Superior Court of first-degree murder with the special circumstance of kidnaping, another count of first-degree murder, and one count of attempted murder. They were each sentenced to terms of life without the possibility of parole in state prison. In 2013, the California Court of Appeal affirmed the judgment, and the California Supreme Court denied a petition for review. In 2014, petitioner filed a habeas petition in the state superior court, which was denied as untimely and procedurally barred, and because it did not state a cognizable basis for relief. He then filed a habeas petition in the California Court of Appeal, which was also denied. Finally, he filed a habeas petition in the California Supreme Court in August 2014, and in January 2015, he

amended that petition. The California Supreme Court denied the petition a month later with a citation to *In re Robbins*, 18 Cal.4th 770,780 (1998). Thereafter, petitioner filed the instant federal petition.

Petitioner claims: (1) that he received ineffective assistance of counsel at trial; (2) admission of character evidence violated his right to due process; (3) his convictions were supported by insufficient evidence; and (4) he received ineffective assistance of counsel on appeal.

II. FACTUAL BACKGROUND

In the afternoon of March 24, 2006, Willie Lavall, Jr., and his friend Johnny Denton, were putting a new license plate on Denton's car in the driveway of the apartment complex in Antioch, California, where Denton's girlfriend lived. A green minivan pulled up, and two men got out of the van with guns pointed at Lavall and Denton, told them to get into the van, and pushed them toward it. A third person was in the driver seat. Lavall and Denoton did not recognize the gunmen or the driver. Lavall began to run, and one of the men shot him in the chest. After he went down, the van ran him over and dragged him for several feet. He eventually died from the blunt force trauma caused by the van. Meanwhile, Denton also ran from the gunmen and hid behind a dumpster. One of the gunmen had shot him in the arm, but Denton survived.

Two months after the shooting, Denton identified petitioner as his shooter out of four six-photo arrays, with 80% certainty. He maintained the same level of certainty at the preliminary hearing. He said that he based his identification on petitioner's facial features, especially his eyes and mustache, but was not 100% certain because the shooter had short dreadlocks, and petitioner just had short hair. By the time of the trial, four years after the shooting, Denton identified petitioner with 60-70% certainty. Petitioner matched the physical descriptions of the shooter offered by Denton, and nearly matched the description offered by the apartment complex manager who had seen the shooting from about 60 yards away.

A motive for the shooting was not established, but Lavall was a crack cocaine dealer and Denton sold marijuana.

2

The van was rented and traced to petitioner's co-defendant, Hezekiah Edwards, whose mother lived in the complex where the shooting took place. Katrina Fritz worked at the rental location, and she knew petitioner, Edwards, and Edwards's girlfriend Manika Dunn. Edwards had rented cars from Fritz's location in the past, but he could not do so on this occasion because he did not have a valid driver's license or credit card. The van was instead rented for Edwards by Aberial Bradley, a close friend of both Edwards and his mother.

Dunn testified that one night in March 2006, at Edwards's request, she came to Antioch and drove the van from Antioch back to Oakland. Edwards told her that the van was "hot," and later she heard him say on the phone that someone "got shot" and someone "got run over." The next day, Edwards and Dunn picked up the van and returned it to the car rental company.

On the evening of March 29, 2006, petitioner and Edwards dropped Dunn at a BART station in Oakland so that she could go meet Bradley. Bradley and her nine-year-old son picked up Dunn when she got off BART, and told Dunn that she had to drive to back to Oakland to meet Edwards. On the way, Edwards sent Dunn text messages saying that he thought that Bradley was going to "get down on us" about the van, and told her to meet him behind a gas station in Oakland. Dunn, sensing danger, told Bradley to drop her off at her friend Yushica Skipper's house in Oakland. Bradley did so, and then Dunn told Bradley to go home and meet Edwards another day. Bradley dropped off her son at his father's house in Berkeley.

Edwards was angry when she found out that they were not going to the gas station. At Edwards's direction, Dunn called Bradley and told her to come back to Skipper's house. When Bradley arrived, Dunn went outside to meet her and got into the front passenger seat of Bradley's car. Dunn saw a man approach Bradley's car from the rear with a silver gun, and Dunn jumped out of the car and fled. The man was not Edwards or petitioner, and he shot Bradley multiple times in the head. When police arrived, Bradley was taken to a nearby hospital where she died from the gunshot wounds. The police found shell casings that were fired from the same gun as shell casings found at the Antioch shooting. Cell phone records showed that petitioner's cell phone was in the area at the time.

Edwards made numerous phone calls from jail while awaiting trial, which were

3

recorded. He told Dunn and another woman to dispose of a gun that was in his car, albeit a different gun than the one matching the casings found at the scene of the murders. In several conversations, Edwards expressed concern that Dunn would talk to the police. He discussed eliminating Denton before trial. Edwards and petitioner spoke frequently, proclaimed their loyalty and love for another, and discussed how the police had not yet linked the Antioch and Oakland murders. They also discussed eliminating Dunn as a witness and whether she would stay loyal. Petitioner advised Edwards to talk to another inmate who was awaiting trial for double murder because two witnesses in that case had been murdered.

## ANALYSIS

I. STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.§ 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent

4

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

II. PROCEDURAL DEFAULT

Respondent argues that Petitioner's claims of ineffective assistance of trial and appellate counsel and of improper admission of evidence are procedurally defaulted from federal habeas review. A federal court will not review questions of federal law decided by a state court if the state court's decision rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). "The [independent and adequate state grounds] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds." *Ibid.* A prisoner may be excepted from this doctrine by showing cause for the default and prejudice. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992) (citations omitted).

Petitioner's claims of ineffective assistance of trial and appellate counsel and of improper admission of evidence were raised in his state habeas petition to the California Supreme Court, and were denied with a citation to *In re Robbins*, 18 Cal. 4th 770, 780 (1998). A denial with such a citation is a denial as untimely. *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007). California's timeliness rule is independent, *Bennett v. Mueller*, 322 F.3d 573, 582-83 (9th Cir. 2003), and adequate, *Walker v. Martin*, 131 S. Ct. 1120, 1131 (2011). Thus, these claims, which the state court rejected as untimely, are procedurally defaulted from federal habeas review.

For petitioner to obtain federal review of his defaulted claims, he must show cause and prejudice for the default. In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court announced an equitable rule by cause is found excusing procedural default of a claim of

5

ineffective assistance of trial counsel, such as petitioner's first claim. *Martinez* applies where: (1) the claim was "substantial;" (2) state law requires the claim be brought in an initial-review collateral proceedings; (3) there was no counsel or only ineffective counsel during the state collateral review proceeding; and (4) the state collateral proceeding was the "initial" review proceeding for the claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (discussing *Martinez*, 132 S. Ct. at 1318-19, 1320-21). *Martinez* applies where the state's "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise the claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 423. The *Martinez* exception arguably applies to California petitioners because, under California law, "except in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal." *People v. Lopez*, 42 Cal. 4th 960, 972 (2008).

Petitioner's claim of ineffective assistance of trial counsel does not fall under the *Martinez*, however, because the procedural default did not occur in the initial review proceeding for petitioner's claim. Rather, the California Supreme Court imposed its untimeliness bar in petitioner's third collateral proceeding in state court. The *Martinez* rule does not apply in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons." *Martinez*, 566 U.S. at 16. Here the initial-review collateral proceedings took place in the superior court when petitioner filed his first state habeas petition. Because the procedural bar applied by the California Supreme Court took place in a later state collateral proceeding, the exception under *Martinez* does not apply.

Nor is there any other showing of cause. Petitioner argues that cause is established by counsel's ineffective assistance at trial. Cause for a procedural default generally turns on "whether the prisoner can show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488

(1986). Any deficiency in counsel's representation at trial did not cause petitioner to untimely file his post-conviction habeas petition. Therefore, it did not cause his procedural default.

Petitioner's habeas claims of ineffective assistance of trial and appellate counsel and that evidence was improperly admitted are procedurally defaulted from federal habeas review. Because of this conclusion, respondent's alternative argument that these claims lack merit need not be addressed. Petitioner's remaining claim — that his convictions violate due process because they were not supported by sufficient evidence — is not procedurally defaulted because he raised it on direct appeal in compliance with California procedural rules. This claim is addressed below.

III. SUFFICIENCY OF EVIDENCE

Petitioner claims that there was insufficient evidence to support the murder and attempted murder convictions, and the finding of the special circumstance of kidnaping. Sufficiency of evidence claims in federal habeas petitions are subject to a "twice-deferential standard." *Parker v. Matthews,* 132 S. Ct. 2148, 2152 (2012) (per curiam). First, relief must be denied if, viewing the evidence in the light most favorable to the prosecution, there was evidence on which "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979). Second, a state court decision denying a sufficiency challenge may not be overturned on federal habeas unless the decision was "objectively unreasonable." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). A federal court does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt has there been a due process violation. *Jackson*, 443 U.S. at 324.

Petitioner claims there was insufficient evidence of asportation to support the finding of a special circumstance of kidnaping for the murder of Lavall. Under California law, the special circumstance established by proof of simply *attempted* kidnaping (*see* Cal. Pen. Code 190.2(a)(17)(B) (emphasis added)), which was the prosecutor's theory here. Attempted kidnaping occurs if the defendant specifically intends to kidnap and takes a direct but

7

ineffectual step toward its completion. *See People v. Medina,* 41 Cal.4th 685, 694-95 (2007). Asportation is not an element of attempted kidnaping. *People v. Cole*, 165 Cal.App.3d 41, 47-48 (1985).

The California Court of Appeal reasoned that Denton's testimony that the gunmen commanded him and Lavall to get into the van showed an intent to kidnap, and his testimony that the gunmen pointed guns at them and pushed them towards the van showed a direct but ineffectual step toward completion of the kidnaping. The evidence the gunmen directed them into a van in which a driver was waiting also gave the jury reasonable grounds for deciding that the plan was to drive the victims away, and not simply to keep them in a parked van. There is no indication why a reasonable fact-finder could not believe Denton's testimony on these issues. Accordingly, the state court reasonably found sufficient evidence for a rational fact-finder to find the special circumstance of kidnaping.

The state court also reasonably found sufficient evidence to support the convictions for the murder of Lavall and attempted murder of Denton in Antioch. Denton identified petitioner as one of the two gunmen, and he matched the description of one of the shooters by Denton and the apartment manager. There was evidence that Denton did not know the gunmen, and there was no evidence that Denton had any motive to falsely identify petitioner. In addition, cell phone records placed petitioner in the location of the shootings at the time, and his recorded phone conversations with Edwards indicated that he was discussing killing witnesses.

There was also sufficient evidence to support petitioner's conviction for the Bradley murder. The evidence of his participation in the Antioch shootings provided evidence of his motive for Badley to be killed as a witness. Petitioner was with Edwards when they dropped off Dunn to go meet Bradley before her murder, and cell phone records placed petitioner near the gas station where Dunn was ordered to bring Bradley and later placed petitioner near the scene of her eventual murder. In addition, the bullet casings showed that the weapon used to kill Bradley was also fired by one of the gunmen in Antioch; Bradley was killed with a silver gun, and Denton testified that in Antioch petitioner (not the other gunman) used a silver gun.

Petitioner challenges the strength of Denton's identification of him. Denton chose

petitioner out of 24 photos shortly after the incident, with an 80 percent degree of certainty. He felt similarly certain at the preliminary hearing. The only reason that he was not 100% certain was the hairstyle, which could easily be changed. And although his certainty dropped to 60 to 70 percent at trial, that took place four years after the shooting. Under these circumstances, the jury could reasonably find that Denton's identification of petitioner as his shooter was correct.

The state court reasonably concluded that there was sufficient evidence for reasonable fact-finders to convict petitioner of attempted murder, murder of Lavall with the special circumstance of kidnaping, and murder of Bradley.

## CONCLUSION

For the foregoing reasons, the petition is **DENIED**.

A certificate of appealability will not issue because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the United States Court of Appeals.

The clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

Dated: October 1, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE